IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-3 Erie |
| | ) | |
| ERIC J. ANDRZEJEWSKI | ) | |

**SENTENCING MEMORANDUM**
**OF THE UNITED STATES**

Andrzejewski seeks a downward variance of thirty-seven (37) months below his applicable Sentencing Guidelines range. His obvious sexual interest in young children, coupled with his use of the TOR network and encryption calls for a guideline range sentence.

**Factual Background**

A website known as "Playpen" operated on the TOR Network ("the Network") available to Internet users who were aware of its existence. The Network is designed specifically to facilitate anonymous communication over the Internet. In order to access the Network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the Network's administrators, or downloading a publicly-available third-party application. Using the Network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location. Because of the way the Network routes communication through other computers, traditional IP identification techniques are not viable.

Websites that are accessible only to users within the Network can be set up within the

Network and the Playpen site was one such website. Accordingly, Playpen could not generally be accessed through the traditional Internet. Only a user who had installed the appropriate software on the user's computer could access Playpen. Even after connecting to the Network, however, a user had to know the exact web address of Playpen in order to access it. Websites on the Network are not indexed in the same way as websites on the traditional Internet. Consequently, unlike on the traditional Internet, a user could not simply perform a Google search for the name of the Playpen site and obtain the web address for Playpen and click on a link to navigate to the Playpen site. Rather, a user had to have obtained the web address for Playpen directly from another source, such as other users of Playpen or from online postings describing both the sort of content available on Playpen and its location. Accessing Playpen, therefore, required numerous affirmative steps by the user, making it extremely unlikely that any user could have simply stumbled upon Playpen without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

Playpen was a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children, including the safety and security of individuals who seek to sexually exploit children online. According to statistics posted on the site, Playpen contained a total of 117,773 posts, 10,622 total topics, and 214,898 total members as of March 4, 2015. The website appeared to have been operating since approximately August 2014, which is when the first post was made on the message board. On the main page of the site, located to either side of the site name were two images depicting partially clothed prepubescent girls with their legs spread apart.

During its investigation of the Playpen site, the FBI obtained court authorization to utilize a network investigative technique (NIT) to obtain the IP addresses of those individuals accessing

the Playpen site. The utilization of the NIT revealed that an IP address subscribed to by Andrzejewski at a residence in Erie, Pennsylvania was accessing the Playpen site under the username "katiekat."

Based upon this information, a federal search warrant was obtained on December 21, 2015, for Andrzejewski's residence in Erie. The search warrant was executed by the FBI on December 23, 2015. Andrzejewski's computer equipment was seized and he was interviewed by the FBI.

During the interview, Andrzejewski admitted to downloading child pornography from various sites on the TOR Network. He stated that he may have gone to the Playpen site and may have utilized the username "katiekat." He further revealed that the last time he had downloaded child pornography was approximately two weeks prior to the interview.

A forensic examination of Andrzejewski's digital devices revealed the presence of 157 images of child pornography and 4 videos depicting child pornography. One video depicted a toddler being penetrated by an adult penis.

Andrzejewski's computer also contained a software program entitled CCleaner designed to permanently remove evidence of Internet activity and various other items that would have evidentiary value for someone engaged in child pornography related activity on their computer. His computer was also utilizing TOR software, which contained evidence of child pornography related activity in the TOR downloads folder. Also discovered was a folder labeled "Katie" which contained surreptitiously recorded videos of a subsequently identified adult female with the first name of Katie who was showering in the videos.

Agents also seized an external hard drive from Andrzejewski's residence, which was later found to be encrypted. When asked for the encryption key or password, Andrzejewski provided

false information that failed to unlock the encrypted drive. Agents were never able to unencrypt and open the drive and discover its contents.

## Argument

### A. Legal Context

Numerous courts have emphatically expressed the wretched consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310

4

(11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *aff'd,* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography defendant. In denying the defendant's challenge to the legitimacy of the child pornography guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237). Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to

impose." *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C.  Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Andrzejewski is 97 to 121 months of incarceration to be followed by a term of supervised release of not less than five years to life.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 97 to 121 month guideline is justified, reasonable, and appropriate in this case.  Andrzejewski does not seek a downward departure based on any specific provision of the Sentencing Guidelines. Rather, Andrzejewski is seeking a downward variance of thirty-seven months to the mandatory minimum sentence of sixty months based primarily upon his mental health issues, apparently stemming from claimed past abuse and his past cooperation with authorities.

### E.  Section 3553 Factors

When sentencing a defendant, the Court's reasoning must be guided by all of the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background.  *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).  In pertinent part, these factors include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)   the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law,  and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
> (3)   the kinds of sentences available;
> (4)   the kinds of sentence and the sentencing range established for -
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...

(5)     any pertinent policy statement-
  (A) issued by the Sentencing Commission ...
(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all of the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate manner in which to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 97 to 121 month guideline range.

**1. Nature and Circumstances of the Offense**

Andrzejewski's case is not within the normal heartland of child pornography cases. He utilized the TOR Network – the dark web – to obtain his child pornography. Solely on that fact his case is more troubling than the normal child pornography case. Andrzejewski also refused to unlock his encrypted external hard drive. The only reasonable conclusion to draw from this refusal is that the drive contained his vast child pornography collection. His guideline range is lower because he was able to hide the contents of his hard drive. His refusal to reveal the full extent of his child pornography involvement is not a harbinger of success upon his release from jail. Rather, it shows cunning that refutes a full acceptance of his problem.

"An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, Office of Juvenile Justice and Delinquency Prevention, *Child Molesters: A Behavioral Analysis–For Professionals Investigating the Sexual Exploitation*

*of Children,* 107 (5th ed. 2010). Andrzejewski's material was not merely seventeen-year-olds modeling naked. No, his stash of depravity was rife with young children being raped and abused. These images and movies are so repulsive that only someone with a profound interest in them would keep them close by.

Andrzejewski did not stumble upon child pornography by accident and decide to keep a little sample. Rather, he went looking on the dark web for child rape videos and images. His ability to navigate the darkest corners of the dark web is reason alone for a guideline range sentence.

**2. History and Characteristics of the Defendant**

Andrzejewski has not explained why his history of mental health problems should result in less jail time. If anything, these issues should cause the Court to have less confidence in Andrzejewski's ability to be law abiding when released back into the community. His history of mental instability and drug use make him more of a danger to the community.

Andrzejewski's recent claim that he was the victim of sexual abuse does not justify a sentence below the guideline. *See United States v. Holtz*, 2008 WL 2755449 at *4 (10th Cir. 2008) (claims of prior abuse are "nothing out of the ordinary" and so the district court could properly find that evidence of it "did not justify a below- Guidelines sentence"). It is a common excuse among those accused of child pornography crimes to claim that they were sexually abused as a child. Both common sense and scientific research undercut such post-hoc rationalizations.

It does not require a Ph.D. to conclude that a person who experiences a traumatic event is more likely to empathize with another person who is going through similar trauma. Experiencing a hurricane makes one naturally more empathetic to the plight of those fearing an

impending hurricane.  Experiencing an earthquake while on vacation in Las Vegas makes one naturally more empathetic to the tremors experienced by those in southern California.  The same common sense logic applies to those who suffer sexual abuse of any kind, whether childhood sexual abuse or rape as an adult.  Those individuals will naturally be more empathetic towards someone who has experienced the same type of sexual abuse.  The research on empathy supports this common sense analysis.  "Theoretically, the closer that one's own personal victimization experience matches a victim's condition (i.e., relationship context), the more one should identify with that situation."[1]  Indeed, "those who have experienced some type of sexual victimization report more empathy than those without such experience."[2]

In a study published in 2016, researchers conducted qualitative research on male victims of sexual abuse, inquiring why they had not perpetuated the abuse on others.  "By far, the most commonly cited reason the participants gave for having not sexually offended was experiencing empathy for other people and having no desire to hurt others."[3]  When asked to explain, participants in the study made statements such as, "Experiencing pain is like putting your hand in the fire. You don't have to tell anyone twice that they are experiencing pain. I wouldn't want to stick someone else's hand in the fire. . . I'm aware of the pain and emotions that an abused person would go through and I don't want to put anyone else through that."[4]  The study's authors observed that "[s]uch evidence is unique as it directly contradicts the victim–offender cycle hypothesis because it demonstrates that not all victims become offenders and, in fact, the

---

[1] Osman SL. (2014). Participant Sexual Victimization by an Acquaintance and Gender Predicting Empathy with an Acquaintance or Stranger Rape Victim. Journal of Social and Clinical Psychology, Vol. 33, No. 8, 2014, pp. 732-742.
[2] Osman SL. (2011). Predicting rape empathy based on victim, perpetrator, and participant gender, and history of sexual aggression. Sex Roles 64, 506–515.
[3] *Id*.
[4] *Id*.

9

victimizing experience contributed to their status as a nonoffender."[5] In other words, instead of making them *more* likely to offend against a child, being a victim of sexual abuse actually makes them *less* likely to offend because the natural empathy developed from such experiences deters such perpetuating behavior. "This, coupled with the knowledge that the majority of victims do not become sexual offenders (Salter et al., 2003), adds substantially to the argument that the pathway from victim to offender is not as direct as the literature would have us believe."[6] And studies have shown that "not all victims of childhood sexual abuse go on to sexually abuse others (Jespersen et al., 2009; Thomas & Fremouw, 2009; Widom & Ames, 1994). In fact, the majority of victims do not go on to perpetuate the abuse (Salter et al., 2003)."[7] "Furthermore, not all sexual offenders have a history of sexual abuse (Jespersen et al., 2009). Thus, 'sexual abuse history is neither a sufficient nor a necessary condition for adult sexual offending' (Jespersen et al., 2009, p. 190)."[8]

Andrzejewski's recent claims should also be viewed with skepticism because research has consistently shown that such self-reports by those accused of sexual offending are inherently unreliable in a statistically quantifiable way. In 2001, a series of studies from 1978 through 1994 were examined in an article published in Federal Probation. The article explained that the three different studies showed remarkable consistency such that the following conclusions could be summarized as follows:

1. Adults will lie and understate by a factor of five to six the number of sexual crimes they have committed.
2. Adults will lie and under report their history as a juvenile sex offender.
3. Adults will lie and over report their history of childhood sexual victimization.
4. With polygraphs, they disclose six times as many victims and most confess

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

10

that they were sexually offending as juveniles.

Hindman, J. & Peters, J.M. (2001), *Polygraph testing leads to better understanding adult and juvenile sex offenders*, Federal Probation, 65(3), 8–15.  One chart puts the evidence in stark relief:

**TABLE F**
*Comparing the Histories of Adult Offenders Before and After Polygraph 1994–1999*

|  | Pre-Polygraph | Post-Polygraph |
|---|---|---|
| Average number of victims reported | 2.9 | 11.6 |
| Percent reporting being sexually abused as a child | 61% | 30% |
| Percent reporting sexually abusing others as a child | 27% | 76% |

As the chart makes clear in the second row, before taking a polygraph, 61% claimed to have been sexually abused as a child.  But that number fell by half to 30% when the polygraph examination was administered.  In other words, more than half of the defendants who claimed to have been sexually abused had lied.  The article's authors summarized the situation thus: "Today, just as in 1978, adult offenders not polygraphed are very likely to minimize the history of their abusive behavior and to overstate their own histories of victimization." *Id*.

Even if there were a correlation between being a victim of child molestation and later engaging in child pornography activity — which is not supported by logic or science— correlation is not causation.  While this "correlation" may appear attractive as an explanation for inexplicable conduct, reality does not bear it out.  If being sexually abused makes one more likely to offend in a like manner, why don't girls, who make up a disproportionately large percentage of child exploitation victims, make up an equally large percentage of child exploitation offenders?  In other words, if abuse begets abuse, then the large volume of female

victims would result in a statistically larger volume of female offenders.  Statistics do not bear this out.  Indeed, how many female pedophiles has this Court sentenced as compared to males?

Research in this area further illustrates that the claim that being abused causes someone like Andrzejewski to abuse is scientifically unsupported. "The victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend.  However, there are serious limitations to this explanation."  Lambie, Ian, et al.*, Resiliency in the victim-offender cycle in male sexual abuse*, Sex Abuse: A Journal of Research and Treatment 14(1), 43 (2002)  see also Glasser, M. et al., *Cycle of child sexual abuse: links between being a victim and becoming a perpetrator*, The British Journal of Psychiatry 179, 488 (2001) (noting that "the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"); and Briggs, F. and R. Hawkins, *A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders*, Child Abuse & Neglect 20(3), 230 (1996) (concluding that "[S]exual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations.").

With respect to studies which have suggested that "prior victimization may have some effect in a minority of perpetrators . . . [a]nother possibility is that some sexual perpetrators may feign sexual victimization in order to gain sympathy, preferential treatment, or therapy." Glasser, M. et al., *Cycle of child sexual abuse: links between being a victim and becoming a perpetrator*, The British Journal of Psychiatry 179, 488 (2001).  See also Hall, R.C.W., *A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues,* Mayo Clinic Proceedings 82(4), 464 (2007) ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children

themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior."); Haywood, Thomas et al., *Cycle of Abuse and Psychopathology in Cleric and Noncleric Molesters of Children and Adolescents,* Child Abuse & Neglect 20(12) 1234, (1996) ("Studies into prevalence of childhood sexual abuse among sex offenders have produced mixed results with 8% to 60% of child molesters reporting having been sexually abused as a child. Variability in prevalence rates across studies may be due in part to differing motivations on the part of subjects to give self-serving histories. . .") (citations omitted); and Briggs, F. and R. Hawkins, *A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders*, Child Abuse & Neglect 20(3), 232 (1996) ("Perpetrators may lie about their actions or attempt to excuse their behavior by pointing to their own victimization as children. . . Excuse-making may be more prevalent in settings where such behavior may be useful, such as in the early stages of therapy (before learning that excuse-making is not acceptable) or during the trial process (perhaps under the guidance of enthusiastic defense lawyers)."). Indeed, as explained above, "when verified by polygraph . . . the percentage of offenders who experienced sexual victimization in their own lives drops significantly." Hindman, Jan et al., *Shedding Light on the Histories of Sex Offenders Using Clinical Polygraphy,* The Sexual Predator (vol. IV), 20-5 (2010); *see also* Hindman, Jan et al., *Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders*, Federal Probation 65(3), 8 (2001).

      The notion that the challenges faced by Andrzejewski in his life are a justification for his crimes is offensive. Every individual faces challenges in their life, some more severe, some less severe. But no challenge excuses or mitigates the types of vile offenses committed by

13

Andrzejewski. The victims of his crimes—children exploited and recorded in the worst moments of their lives—are the ones who experience challenges beyond imagination. On balance, the history and characteristics of Andrzejewski make clear that he has lived a relatively stable life with family support, and has had adequate financial resources to live a law-abiding life. He was not corralled into this crime by a series of unfortunate life circumstances. Rather, he chose his path.

Andrzejewski also claims that his compliance with his release conditions constitutes extraordinary post offense rehabilitation. Merely complying with release conditions, seeing your own son occasionally and attending some counseling sessions cannot be deemed extraordinary. Andrzejewski merely did what he was supposed to. He has taken no steps to address the harm to the victims in this case.

Andrzejewski also cites his past cooperation in a child pornography case in support of his variance request. Far from supporting his request, his past cooperation with the FBI made him highly aware of the consequences of involvement with such material and the terrible impact on the victims. His past cooperation should have deterred his sexual interest in young children. Instead, he was unable to control his urges. It appears that all Andrzejewski learned from his past cooperation was to take additional steps to attempt to hide his tracks by using the dark web and encryption. Nothing about his past cooperation is mitigating since it did nothing to deter Andrzejewski's own keen sexual interest in minors.

> **3. The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v.*

*Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).  The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.(quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* The Supreme Court has long recognized that sexual abuse has devastating and long lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment.  *Kennedy v. Louisiana*, 554 U.S. 407, 447-70 (2008).

Andrzejewski received and possessed child rape photos and movies. Surely a sentence thirty-seven months below the bottom of his Guideline range does not adequately reflect the gravity of such conduct.

### 4.  Impact on the victims

Congress has plainly indicated that "[e]very instance of viewing images of child pornography represents a ...repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).  The words of Congress and many courts are echoes of the victims themselves.

Plainly, the negative consequences that Andrzejewski will experience from his conviction pale in comparison to the everlasting and devastating impact on these most innocent victims. The consequences for Andrzejewski were entirely foreseeable and of his own making.

The victims continue to suffer enormously when Andrzejewski and his ilk entertain themselves with pictures of these young victims being raped.

### 5. The Need for the Sentence Imposed to Afford Adequate Deterrence

#### a.     General Deterrence is an Important Factor in Sentencing

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]" *Id.* (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child pornography will pay a very heavy price. The goal of deterrence is realized if even

one child pornography collector is deterred. A sentence within the applicable guideline range will accomplish this goal. A mandatory minimum sentence thirty-seven months below the bottom of the Guideline range most definitely will not.

### b. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider. *See Irey*, 612 F.3d at 1210. Since Andrzejewski claims that he has a variety of problems, it is easy to conclude that he will have a difficult time overcoming his demonstrated sexual interest in young children. As a result, the Court should impose a significant guideline range jail sentence and a considerable term of supervised release in order to ensure that the danger to the community posed by Andrzejewski is minimized as much as possible.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

In *Goff, supra*, the district court sentenced a child pornography defendant to four months imprisonment despite an applicable guideline range of 37 to 46 months. The Third Circuit vacated the sentence and remanded for resentencing, holding that such a lenient sentence was unreasonable. *Goff*, 501 F.3d at 262. The court opined that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of § 3553 factors. Specifically, the district court did not adequately consider the nature and circumstances of the offense, the need to promote respect for the law, the avoidance of unwarranted sentencing disparities and affording adequate deterrence. *Id*. at 258. Goff downplayed the seriousness of the offense by implying that he committed a victimless crime driven by his curiosity. The Third Circuit emphatically rejected these claims. *Id*. at 258-59.

Goff also argued that he was entitled to a variance because he had never acted out in a sexual way with children. The Third Circuit vehemently disagreed with this argument, reasoning:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id*. The Third Circuit was also thoroughly unpersuaded that Goff's supposedly exemplary life and charitable activities justified such a low sentence. The sentencing court's reliance on Goff's lack of a criminal history was also criticized because many child pornography offenders are first time offenders. *Id*. at 260-61. The Third Circuit also noted disapprovingly that the district court had failed entirely to consider deterrence when arriving at such a drastically low sentence for Goff. *Id*.

Similarly, the child pornography defendant in *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009), was sentenced to five years of probation and a $10,000 fine despite his guideline range of 30 to 37 months. The government appealed the sentence arguing that it was substantively unreasonable. The Third Circuit agreed and vacated the excessively lenient sentence. *Id*. at 221. Lychock argued that his sentence should have been affirmed because of his age (37), acceptance of responsibility and lack of criminal record. The Third Circuit was not convinced reasoning that none of these factors justified such a drastic deviation from the guideline range. *Id*.

The Third Circuit has also overturned, as excessively lenient and thus substantively unreasonable, a child pornography sentence of five years of probation to begin with six months

home confinement, along with a $2,500 fine, in *United States v. Hayes*, 383 F. App'x. 204 (3d Cir. 2010). Hayes' guideline range was 51 to 63 months. The sentencing court focused on Hayes' lack of a criminal history and supposed low risk of reoffending. His post arrest psychological treatment and family support were also significant factors in the far below guideline sentence. The district court also focused on the fact that Hayes had not actually sexually assaulted a child. *Id*. at 205-06. The Third Circuit found that none of these reasons justified such an excessively lenient sentence. *Id*. at 208. As a result, the Third Circuit vacated the sentence as substantively unreasonable and the case was remanded for resentencing. *Id*.

**F.  Conclusion**

Andrzejewski navigated the dark web to find his child pornography clearly indicating a more sophisticated involvement in child pornography than many other offenders. His illegal stockpile depicted young children being raped and sexually humiliated. He kept this material close at hand knowing full well that if caught, he faced serious consequences. The costs of his unwavering decision to receive and possess child pornography pale in comparison to the horrible toll suffered by the child victims whose abuse enthralled Andrzejewski. He deserves a sentence well within his applicable Guideline range.

        Respectfully submitted,

        SCOTT W. BRADY
        United States Attorney

        s/Christian A. Trabold
        CHRISTIAN A. TRABOLD
        Assistant U.S. Attorney
        PA ID No. 75013